IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DENNIS THOMPSON, # B67474, | ) ) ) ) |
| Plaintiff, | ) Case No. 19-CV-0288-SMY ) |
| vs. | ) ) |
| WEXFORD HEALTH SOURCES, INC., JACQUELINE LASHBROOK, MOHAMMED SIDDIQUI, AND ANGELA CRAIN, | ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Dennis Thompson, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center ("Menard"), brings this action for alleged deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff asserts that he has not received adequate medical care for his severe obesity and accompanying chronic pain conditions. He seeks monetary damages and equitable relief.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner Complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

1

## The Complaint

Plaintiff makes the following allegations in the Complaint: Plaintiff is morbidly obese, weighing 350 pounds (Doc. 1, p. 6). His weight causes him pain and DJD[1] in his knees, shoulders, hips, cervical, thoracic, and lumbar spine, as well as acetabular dysplasia in his right hip (*Id.*). His deteriorating medical condition has led to stabbing pain in his back that radiates into his legs as he walks. As a result, he walks hunched over and has a reduced range of motion (*Id.*). He also suffers from spasms in his pelvis that cause incontinence (*Id.*).

Plaintiff has been forced to walk without an assistive walking device which has severely exacerbated his condition for over two years and accelerated his physical deterioration (*Id.* at 7). Although he was allowed to use a walker in physical therapy, Defendants Dr. Siddiqui and Crain repeatedly denied his requests for medical permits that would allow him to have a walker at all times (*Id.*). Plaintiff needed a walker as early as 2016, but, despite his ongoing severe pain, Dr. Siddiqui did not authorize a walker until September 27, 2018 (*Id.* at 7-8). That permit was temporary, and he did not get a permit for a walker until December 4, 2018 (*Id.* at 8). Plaintiff informed Lashbrook that Dr. Siddiqui and Crain were not giving him needed accommodations and were not treating his needs as ADA qualifying. She responded that he could not reasonably expect all of the medical requests he made to be fulfilled (*Id.* at 8-9).

Plaintiff suffered severe shoulder and spinal pain for nearly two years, during which time Dr. Siddiqui ignored his complaints that medication did not alleviate the pain (*Id.* at 9-10). Plaintiff also informed Dr. Siddiqui that he was having trouble performing routine personal care tasks such as cleaning his own body (*Id.*). Dr. Siddiqui refused to order updated x-rays to monitor the progression of Plaintiff's DJD because he disliked Plaintiff's ongoing medical grievances and

---

[1] Plaintiff does not define this acronym, but context suggest that he is referring to degenerative joint disease as "DJD."

litigation (*Id.* at 10). Dr. Siddiqui told him he had no time to render care because all of his time was spent responding to the grievances (*Id.* at 10-11).

Dr. Siddiqui finally ordered an updated x-ray in September 2018 after Plaintiff received a favorable decision in another lawsuit (Case No. 15-CV-850-NJR) (*Id.* at 11). The x-ray revealed further degeneration of his joints, but Dr. Siddiqui misrepresented the results, stating they were normal (*Id.*). When Plaintiff confronted Dr. Siddiqui about the results, he reluctantly ordered an MRI, but the order was denied by the Corporate Director of Wexford (*Id.* at 11-12). In lieu of an MRI, the Director ordered an initial course of 8 to 12 weeks of physical therapy (*Id.*). As of the filing of Plaintiff's Complaint on March 10, 2019, the therapy had not commenced (*Id.*).

As a result of the degeneration over time, Plaintiff has experienced increased difficulty completing basic tasks of daily life including walking or standing up straight (*Id.* at 12). Because he has not received adequate medical care, he has suffered prolonged severe pain and physical degeneration (*Id.* at 17-18). Additionally, Wexford and Dr. Siddiqui failed to retain a diet specialist or to send Plaintiff to an outside provider to get treatment for his food addiction (*Id.* at 18-19). This contributed to his DJD and severe pain (*Id.*). The denial of a walker also contributed to the conditions of obesity and DJD because it prevented Plaintiff from getting any exercise for a prolonged period of time (*Id.*).

Plaintiff has filed many grievances since Dr. Siddiqui became the lead medical doctor at Menard (*Id.* at 12-16). Because of these grievances, Dr. Siddiqui and Lashbrook have engaged in retaliatory conduct (*Id.*). They have both told him that he grieves too many issues, that they spend copious amounts of time responding to his lawsuits, and that he should be thankful for whatever type of care they provide him (*Id.*).

Wexford is liable via respondeat superior for Dr. Siddiqui's failure to meet the basic standard of reasonable care because it can or should control Dr. Siddiqui (*Id.* at 16-17). Additionally, Wexford is liable for Dr. Siddiqui's conduct and the prior medical director's conduct because it has a duty to provide adequate care to inmates (*Id.* at 17-18).

Based on the allegations in the Complaint, the Court finds it convenient to divide this action into the following Counts:

> **Count 1:** **Defendants Lashbrook, Dr. Siddiqui, and Crain violated the Americans with Disabilities Act ("ADA") by delaying or denying his access to an assisted walking device and appropriate housing.**
>
> **Count 2:** **Eighth Amendment deliberate indifference to Plaintiff's shoulder and spine problems for continuing treatment known to be ineffective against Lashbrook and Dr. Siddiqui.**
>
> **Count 3:** **First Amendment retaliation by Lashbrook and Dr. Siddiqui for Plaintiff's repeat medical litigation and grievances.**
>
> **Count 4:** **Violation of Illinois tort laws (735 ILCS § 5/2-622) via medical malpractice and negligence by Dr. Siddiqui and Wexford .**
>
> **Count 5:** **Eighth Amendment deliberate indifference against Wexford for employing doctors who did not provide adequate care or seek outside care.**
>
> **Count 6:** **Eighth Amendment deliberate indifference against Dr. Siddiqui and Wexford for failing to treat Plaintiff's morbid obesity or food and sugar addiction.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

4

**Discussion**

**Count 1**

The Eighth Amendment prohibits cruel and unusual punishment of inmates and imposes an obligation upon prison officials to provide them with adequate medical care for serious medical conditions. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). An Eighth Amendment claim for the denial of medical care has an objective and a subjective component. The objective component requires an inmate to demonstrate that he suffers from an "objectively, sufficiently serious" medical condition. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A condition is considered sufficiently serious if failure to treat it could result in the unnecessary and wanton infliction of pain. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). The subjective component requires Plaintiff to demonstrate that each individual defendant responded to his serious medical condition with deliberate indifference. This occurs when an official "know[s] of and disregard[s] an excessive risk to inmate health." *Greeno*, 414 F.3d at 653.

The doctrine of *respondeat superior* is inapplicable to Section 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Therefore, liability hinges on personal responsibility for the deprivation of a constitutional right. *Id.* at 740 (citation omitted).

The Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111–213, applies to prisons, and an inmate may bring claims for damages pursuant to Title II of the ADA if the state actor's conduct also violates the Eighth Amendment. *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1984); *U.S. v. Georgia,* 546 U.S. 151 (2006). To state a claim against Lashbrook, Dr. Siddiqui, or Crain for violating the ADA, Plaintiff must allege that those individuals also violated the Eighth Amendment. He has done so by alleging that each of these three individuals was

personally aware of his serious medical conditions that prevented him from participating in normal daily activities of life. Specifically, he alleges that the violation of the ADA by failing to provide him with a walking device prevented him from maintaining any level of fitness, and thus led to further physical deterioration and greater inability to care for himself in even the most basic ways. In another case filed in this district, the Court previously found that the treatment of Plaintiff's physical conditions may substantiate an ADA claim. *See Thompson v. Illinois Dep't of Corr.*, Case No. 15-CV-850-NJR, Doc. 197 (Sept. 27, 2018). This Court follows suit. Accordingly, Count 1 will proceed as to Defendants Lashbrook, Dr. Siddiqui, and Crain.

**Count 2**

Plaintiff's also claims that his shoulder and spine degeneration have worsened as a result of Lashbrook and Dr. Siddiqui's conduct. The allegedly debilitating physical degeneration of Plaintiff's spine and shoulder satisfy the objective component of a deliberate indifference claim. *See Diaz v. Godinez,* 693 Fed. App'x 440, 443-44 (7th Cir. 2017) (summarizing numerous recent 7th Circuit cases holding that conditions that cause serious or chronic pain are sufficient at the pleading state of an Eighth Amendment case as serious medical conditions). As to the subjective component, Plaintiff alleges that he saw Dr. Dr. Siddiqui on more than one occasion and received either no treatment or ineffective treatment. The actual course of treatment provided will shed light on whether Dr. Siddiqui was deliberately indifferent, but at this juncture, Plaintiff has made sufficient allegations and set forth sufficient facts to proceed beyond the initial screening of his case.

As a general matter, however, prison officials are "entitled to relegate to the prison's medical staff the provision of good medical care," *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009), and thus may be held liable under § 1983 only if they have "a reason to believe (or actual

knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011). The relevant inquiry turns on the prison official's subjective state of mind. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (en banc). Thus, for a prison warden to be held liable for the conduct of her subordinates, the warden must know about the unconstitutional conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. *T.E. v. Grindle,* 599 F.3d 583, 588 (7th Cir. 2008). To hold Warden Lashbrook liable for his deteriorating condition, Plaintiff would need to plead facts sufficient to allege or suggest that she was personally aware of the deficient care he received, that she knew it was a problem, and that she intentionally failed to act. He has done so as he specifically claims that he spoke with Lashbrook face to face and she acknowledged his physical problems but refused further care. Accordingly, Count 2 will proceed against Lashbrook.

**Count 3**

An inmate has a First Amendment right to file grievances and lawsuits. *Id.; Watkins v. Kasper,* 599 F.3d 791, 798 (7th Cir. 2010). "An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000). To prevail on a retaliation claim, an inmate must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell,* 756 F.3d 983, 996 (7th Cir. 2014) (citations omitted).

Here, Plaintiff alleges he had personal conversations with Lashbrook and Dr. Siddiqui wherein they told him that they were preventing him from getting comprehensive medical care specifically because he was a repeat litigator. Given the alleged rapidly deteriorating state of his

7

medical conditions, threats of preventing care could certainly deter Plaintiff from seeking further assistance via grievances or litigation. Therefore, Plaintiff has provided sufficient information for Count 3 to proceed against Dr. Siddiqui and Lashbrook.

**Count 4**

In Count 4, Plaintiff alleges that he has suffered from medical malpractice or negligence by Dr. Dr. Siddiqui and Wexford. He mentions a certificate of merit and appended documentation that his lawyers filed in another case (*Plaintiff v. Plaintiff et al.,* Case No. 17-CV-843-SMY-RJD). Illinois tort law requires an affidavit of merit for certain actions, and Plaintiff cites the provision that sets forth the requirements—735 ILCS 5/2-622. Without reaching the substance of this claim, the Court finds the documentation acceptable to allow this to claim proceed by exercising supplemental jurisdiction.

**Count 5**

In *Shields v. Illinois Dept. of Corrections,* 746 F.3d 782, 796 (7th Cir. 2014), the Seventh Circuit held that Wexford may be held liable for deliberate indifference if an inmate can establish that he has been harmed by a custom, policy, or practice of Wexford. The *Shields* Court also concluded that a few discreet incidents of less than ideal care cannot be strung together to establish a policy or practice. *Id.* Plaintiff's claim teeters on the edge of the standard articulated in *Shields* because he identifies a valid potential legal theory – deliberate indifference by Wexford via a policy or practice – but it is unclear whether he has identified a sufficient number of incidents to establish a policy or custom. *Shields* left open the issue of how much evidence is enough, and the Seventh Circuit has yet to squarely revisit the issue. The undersigned notes, however, that the Seventh Circuit recently affirmed summary judgment in favor of Wexford over a policy or practice claim strikingly similar to the barebones facts presented in this case about chronic pain, but that

8

was after the benefit of summary judgment briefing and evidence. *See Pegues v. Coe,* 2019 WL 1569042, *1, *3 (7th Cir. April 11, 2019) (unpublished slip op.).

This Court will allow this claim to proceed so that Plaintiff may have the benefit of discovery and briefing on the matter. However, Dr. Dr. Siddiqui will be dismissed from this claim because Plaintiff has already successfully asserted a deliberate indifference claim against him in Count 2; Count 5 is thus duplicative.

**Count 6**

For the reasons set forth in Count 5, Count 6 will be allowed to proceed against Wexford. Additionally, this Count will be allowed to proceed against Dr. Dr. Siddiqui because Plaintiff did not specifically reference morbid obesity as a stand-alone condition in his deliberate indifference claim against him.

**Disposition**

**IT IS HEREBY ORDERED** that **Count 1** will proceed against **Defendants Lashbrook, Dr. Siddiqui,** and **Crain**.

**IT IS FURTHER ORDERED** that **Counts 2 and 3** will proceed against **Defendants Lashbrook** and **Dr. Siddiqui.**

**IT IS FURTHER ORDERED** that **Count 4** will proceed against **Defendants Dr. Siddiqui** and **Wexford.**

**IT IS FURTHER ORDERED** that **Count 5** will proceed against **Defendant Wexford.**

**IT IS FURTHER ORDERED** that **Count 6** will proceed against **Defendants Dr. Siddiqui** and **Wexford.**

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Jacqueline Lashbrook, Mohammed Siddiqui, Angela Crain, and Wexford Health Sources, Inc.: (1) Form 5

(Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that if a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.**

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

**IT IS FURTHER ORDERED** that this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C.

§ 636(c), *if all parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: AUGUST 6, 2019**

*s/ Staci M. Yandle*_____
**STACI M. YANDLE**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter their appearance and file Answers to your Complaint. It will likely take at least **60 days** from the date of this Order to receive Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all Defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**